UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**TRAVELODGE HOTELS, INC.,**

        **Plaintiff,**

    **v.**

**3MSKA, LLC, Siraj Mahida, and Kalubhai Mahida,**

        **Defendants.**

Civ. No. 2:14-7574 (KM)(MAH)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court on the unopposed motion of Plaintiff Travelodge Hotels, Inc. ("THI") for default judgment against Defendants 3MSKA, LLC ("3MSKA"), Siraj Mahida, and Kalubhai Mahida, pursuant to Fed. R. Civ. P. 55(b)(2). (ECF No. 8) This action arises from an alleged breach of a franchising agreement. For the reasons set forth below, I will enter a default judgment in the amount of $170,517.91. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

## I.    BACKGROUND

### a.  The Franchise Agreement and Guaranty

    THI is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. ¶1, ECF No. 1) 3MSKA is a Nebraska limited liability company with its principal place of business in Lincoln, Nebraska. (*Id.* ¶2) Siraj Mahida, and Kalubhai Mahida are Nebraska

citizens and members of 3MSKA. (*Id.* ¶¶3–6)[1]

On or about December 31, 2010, THI entered into a Franchise Agreement with 3MSKA. (*Id.* ¶11 (citing Ex. A ("Agreement"))) The Franchise Agreement authorized 3MSKA to operate a 103-room Travelodge guest lodging facility located at 1101 West Bond Street, Lincoln, Nebraska 68521, Site No. 12192-00225-03 (the "Facility"). (*Id.*)

3MSKA was obligated to operate the Facility for a fifteen-year term. (*Id.* ¶12 (citing Agreement § 5))

3MSKA was required to make certain periodic payments to THI for "royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees" ("recurring fees"). (*Id.* ¶13 (citing Agreement §§ 7, 18.1)

3MSKA was required to pay interest "on any past due amount . . . at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶14 (citing Agreement § 7.3))

The Franchise Agreement also required 3MSKA to submit monthly reports to THI disclosing, *inter alia*, "the amount of gross room revenue earned by 3MSKA at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to THI." (*Id.* ¶15 (citing Agreement § 3.6)) 3MSKA also agreed to maintain "accurate financial information, including books, records, and accounts," and to allow THI to "examine, audit, and make copies" of these records. (*Id.* ¶16 (citing Agreement §§ 3.6, 4.8))

The circumstances under which THI could terminate the Franchise Agreement, upon notice to 3MSKA, included:

(1) [failure to] cure a default as provided in Section 11.1

---

[1]      The third member of 3MSKA, Amirbhai Mahida, was terminated as a party to this lawsuit on February 8, 2015.

> [requiring payment within 30 days of written notice] . . .
>
> (7) [failure to] pay debts as they come due in the ordinary
> course of business . . .
>
> (9) [receipt of] two or more notices of default from [THI] in
> any one year period (whether or not you cure the defaults)

(Agreement § 11.2; Compl. ¶15)

In the event of litigation, the losing party was required to pay "all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party." (Compl. ¶18 (citing Agreement § 17.4))

Siraj Mahida and Kalubhai Mahida provided THI with a Guaranty of 3MSKA's obligations under the Franchise Agreement, effective as of the date of the Franchise Agreement. (*Id.* ¶19 (citing Ex. B)) The Guaranty required Siraj Mahida and Kalubhai Mahida, upon a default under the Franchise Agreement, to "immediately make each payment and perform or cause [3MSKA] to perform, each unpaid or unperformed obligation of [3MSKA] under the [Franchise] Agreement." (*Id.* ¶20 (quoting Ex. B)) Because the Franchise Agreement required the losing party at litigation to pay the other party's costs, the Guaranty made Siraj Mahida and Kalubhai Mahida personally responsible for those costs as well. (*Id.* ¶21)

### b.   The defaults and termination

THI alleges that 3MSKA repeatedly breached its financial obligations to THI under the Franchise Agreement. (*Id.* ¶¶22–26)

On February 13, 2012, THI sent a letter informing 3MSKA that (a) it was in breach of the Franchise Agreement because it owed THI $28,460.89 in outstanding recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶22 (citing Ex. C))

THI sent a second letter on May 9, 2012, informing 3MSKA that (a)

it was in default of the Franchise Agreement and now owed $43,816.20 in unpaid recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶23 (citing Ex. D))

THI sent a third letter on June 7, 2012, informing 3MSKA that (a) it was in default of the Franchise Agreement and now owed $44,816.20 in unpaid recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶24 (citing Ex. E))

THI sent a fourth letter on August 9, 2012, informing 3MSKA that (a) it was in default of the Franchise Agreement and now owed $65,206.09 in unpaid recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶25 (citing Ex. F))

THI sent a fifth letter on February 14, 2013, informing 3MSKA that (a) it was in default of the Franchise Agreement and now owed $94,451.90 in unpaid recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶26 (citing Ex. G))

THI sent a sixth letter on May 22, 2013, (a) informing 3MSKA that it was in default of the Franchise Agreement and now owed $112,321.01 in unpaid recurring fees; and (b) terminating the Franchise Agreement. (*Id.* ¶27 (citing Ex. H))

THI now seeks a judgment against 3MSKA, Siraj Mahida, and Kalubhai Mahida, jointly and severally, awarding remedies provided for in the Franchise Agreement. Specifically, THI seeks a total of $170,517.90, comprising (1) $165,009.31 in unpaid recurring fees plus prejudgment interest on those fees; and (2) $5,508.60 in attorneys' fees and costs. (*See* Proposed Order, ECF No. 8-1)

4

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000. 3MSKA, Siraj Mahida, and Kalubhai Mahida have consented "to the non-excusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey." (Compl. ¶8, Agreement §17.6.3, Ex. B)

## II.    STANDARD FOR ENTRY OF DEFAULT JUDGMENT

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL

3772532, at *2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

## III.   DISCUSSION
### a.   Adequate Service & Defendants' Failure to Respond

The prerequisites for default judgment have been met: 3MSKA, Siraj Mahida, and Kalubhai Mahida have been properly served, and each has failed to file an answer or otherwise respond to the Complaint within twenty-one days pursuant to Fed. R. Civ. P. 12(a). The clerk entered default on March 27, 2015.

Service of 3MSKA, a corporate entity, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> by serving a copy of the summons and complaint . . . on any
> officer, director, trustee or managing or general agent, or any
> person authorized by appointment or by law to receive
> service of process on behalf of the corporation, or on a
> person at the registered office of the corporation in charge
> thereof, or, if service cannot be made on any of those
> persons, then on a person at the principal place of business
> of the corporation in this State in charge thereof, or if there
> is no place of business in this State, then on any employee of
> the corporation within this State acting in the discharge of
> his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

Service of the individual defendants, Siraj Mahida, and Kalubhai Mahida, may be made under the Federal Rules by

> doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to
> the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or
> usual place of abode with someone of suitable age and
> discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by
> appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). Service may also be made by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). The New Jersey rule for serving individuals mirrors the Federal Rule. See N.J. Ct. R. 4:4-4(a)(1).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C) by:

> mailing a copy of the summons and complaint by registered
> or certified mail, return receipt requested, and,
> simultaneously, by ordinary mail to: (1) a competent
> individual of the age of 14 or over, addressed to the

individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

"If service can be made by any of the modes provided by this rule, no court order shall be necessary." N.J. Ct. R. 4:4-4(b)(3).

After making diligent efforts to personally serve 3MSKA, Siraj Mahida, and Kalubhai Mahida, and failing to locate any persons on whom the Complaint and Summons could be served, THI served each with a copy of the Summons and Complaint on February 10, 2015 via certified and regular mail, as required by N.J. Ct. R. 4:4-4(b)(1)(C). (Couch Cert.[2] ¶¶3–8, Affidavits of Diligent Efforts, Ex. A–C). On March 27, 2015, the Clerk of the Court entered the default of 3MSKA, Siraj Mahida, and Kalubhai Mahida, for failure to plead or otherwise defend within the twenty-one day time period provided by Fed. R. Civ. P. 12(a).

The Defendants were properly served and have failed to respond to the Complaint. Defendants' time to respond to the Complaint has long since expired. The clerk has entered default. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

### b. Gold Kist factors

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v.*

---

[2]     Couch Cert. = Certification of Bryan P. Couch, dated May 19, 2015, submitted in support of THI's motion for default judgment, ECF No. 8-2.

*Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

i.  Meritorious defense (*Gold Kist* factor 1)

As to the first factor, my review of the record reveals no suggestion that THI's claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at *5. Accepting the factual allegations as true, I find that THI has stated a claim for breach of the Franchise Agreement and the Guaranty.

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[3]

I am satisfied that THI has set forth a sufficient claim for breach of contract, and I cannot, from the limited materials before me, see any meritorious defense. THI has shown the existence of two valid contracts: the Franchise Agreement and the Guaranty. THI has alleged facts demonstrating that 3MSKA, Siraj Mahida, and Kalubhai Mahida are bound by the Franchise Agreement and Guaranty; that they are obligated to pay recurring fees; that their failure to pay recurring fees or cure their default caused the termination of the contract; and that this breach caused THI to incur damages. There are no facts indicating that THI breached any of its obligations under either the Franchise Agreement or Guaranty.

Therefore, I cannot discern any meritorious defenses to THI'S allegations.

---

[3]    Pursuant to Section 17.6 of the Franchise Agreement (and the Guaranty that incorporates Section 17 of the Franchise Agreement), New Jersey law applies in this diversity action. (Compl. Ex. A, B)

      ii. Prejudice suffered by party seeking default &
          culpability of the parties subject to default (*Gold Kist*
          factors 2, 3)

The second and third factors also weigh in favor of default. 3MSKA, Siraj Mahida, and Kalubhai Mahida were properly served on February 10, 2015, but have failed to appear and defend themselves in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant[s'] culpability in [the] default. *Id.* And "[t]here is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

The only possible conclusion based on the record is that 3MSKA, Siraj Mahida, and Kalubhai Mahida breached their obligations under the Franchise Agreement and the Guaranty; that they, not THI, were culpable for the breach; and that THI was prejudiced as a result. Accordingly, I find that the entry of a default judgment is appropriate.

### c. Remedies

THI seeks two specific types of compensation, totaling $170,517.91. Specifically, THI seeks: (1) $165,009.31 for unpaid recurring fees plus prejudgment interest at the contractual rate; and (2) $5,508.60 for attorneys' fees and costs. (Proposed Order, ECF No. 8-1)

THI has submitted documentary evidence in support of its demands, while 3MSKA, Siraj Mahida, and Kalubhai Mahida have, obviously, submitted nothing. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will grant THI's request for recurring fees, as set forth in Sections 7 and 18.1 and Schedule C of the Franchise Agreement. (Piccola Aff. ¶5[4]) THI has documented recurring fees in the amount of $165,009.31, which includes interest at a rate of 1.5% per month calculated through April 2014.[5] (*See id.* ¶20 (citing Ex. I (itemized statement of recurring fees)))

As to attorneys' fees and costs, I adopt THI's analysis. THI has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* Agreement § 17.4 (giving prevailing party the right to recover reasonable attorneys' fees); Piccola Aff. ¶21; Couch Cert. ¶14, Ex. F). I will enter a judgment that includes $4,000 in attorneys' fees and $1,508.60 in costs, for a total of $5,508.60.

---

[4]     Piccola Aff. = Affidavit of Michael Piccola, dated May 15, 2015, submitted in support of THI's motion for default judgment, ECF No. 8-3.

[5]     Ordinarily, a plaintiff would have sought liquidated damages to compensate for any forecasted recurring fees lost as a result of the premature termination of a franchise agreement. (Agreement § 12). In this case, THI has not sought liquidated damages, but has instead documented some of the actual recurring fees it lost following the termination of the agreement. I therefore award THI damages for recurring fees after May 22, 2013 (the termination date).

## IV.    CONCLUSION

For the foregoing reasons, a default judgment will be entered in favor of Plaintiff Travelodge Hotels Inc., in a total amount of $170,517.91, to be paid to Plaintiff, along with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order will be entered in accordance with this Opinion.

Dated: July 24, 2015

_____

**Kevin McNulty**
**United States District Judge**